UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                        :
UNITED STATES,                          :
                                        :
                 Plaintiff,             :
                                        :     98 Civ. 7076 (BSJ)
            v.                          :
                                        :
VISA U.S.A., INC., ET. Al.,             :     **Order**
                                        :
                                        :
                 Defendants.            :
                                        :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

I.   **Background**

     The Court presumes familiarity with the factual background
and procedural history of the instant litigation. (See Opinion
& Order of June 7, 2007 at 1-6.)  In the summer of 2006, Visa
U.S.A., Inc. ("Visa") and MasterCard International Incorporated
("MasterCard") filed exhibits, testimony, and briefing related
to proceedings before the Special Master under seal pursuant to
a protective order.  The Court recently notified the parties
that it intended to unseal these materials.  Asserting that some
portion of the materials contained trade secrets which would
cause business harm, Visa and MasterCard submitted proposed
redactions to (1) the Report of the Special Master ("Report");
(2) exhibits submitted to the Special Master; (3) deposition and
hearing transcripts; and (4) post-Report moving papers.  The

- 1 -

Court reviewed these proposed redactions and concluded that they were overbroad.  On April 23, 2007, the Court instructed the parties to re-submit a more narrowly-tailored set of redactions. Visa and MasterCard submitted the instant set of proposed redactions on April 30, 2007.  Six third-party banks submitted additional proposed redactions on May 7, 2007.  Visa, MasterCard, and most of the third-party banks have submitted legal memoranda and affidavits in support of their proposed redactions.  For the following reasons, the Court accepts the proposed redactions except as specifically noted in this Order or the attached chart.

## II.  Discussion

### A. Applicable Law

In Lugosch v. Pyramid Company of Onondaga, 435 F.3d 110 (2d Cir. 2007), the Second Circuit evaluated the common law and First Amendment rights of public access to judicial documents. A document filed with a court is a judicial document so long as it is "relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119.

At common law, a presumption of access attaches to all judicial documents.  Id.  The Court must determine the weight of the presumption based on the role of the material in the exercise of Article III judicial power and the value of such information to those monitoring the federal courts.  Id.

(citing United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir.
1995) ("Amodeo II").  "Generally, the information will fall
somewhere on a continuum from matters that directly affect an
adjudication to matters that come within a court's purview
solely to insure their irrelevance." Id.  After determining the
weight of the presumption of access, a court must balance it
against competing considerations.  Id. at 120.  Such
considerations can include whether a judicial document contains
trade secrets[1] or commercially sensitive information.  See
Encyclopedia Brown Prods. Ltd. v. Home Box Office, Inc., 26 F.
Supp. 2d 606, 608-09 (S.D.N.Y. 1998) (refusing to order
disclosure of information which "would give [defendant's]
competitors a bargaining advantage in negotiating with [its
supplier] and, in addition, would impede [defendant's] ability
effectively to bargain with [other] suppliers"); Brown &
Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1179 (6th Cir.
1983) (acknowledging exception to common law right of public
access for trade secrets); Nixon v. Warner Comms., Inc., 435
U.S. 589, 598 (1978) (recognizing that courts may refuse to

---

[1]     Under Section 757 of the Restatement of Torts, relied upon by New
        York courts and courts in this Circuit, a trade secret is "any
        formula, pattern, device, or compilation of information which is
        used in one's business, and which gives him an opportunity to
        obtain an advantage over competitors who do not know or use it."
        The principal considerations are whether the information is
        confidential and whether it is commercially valuable to the
        holder.
Encyclopedia Brown Prods. Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606,
613 (S.D.N.Y. 1998); see Restatement of Torts § 757 (1939).

permit their files to be used "as a source of business information that might harm a litigant's competitive standing"); Amodeo II, 71 F.3d at 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts."). At common law, "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." Id. at 1050.

The public and the press also have a qualified First Amendment right to attend judicial proceedings and access judicial documents. Lugosch, 435 F.3d at 120 (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)). Under the "experience and logic" test, a qualified First Amendment right of access attaches if the documents "have historically been open to the press and general public" and where "public access plays a significant positive role in the functioning of the particular process in question." Id. (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8, (1986)); see Globe Newspaper, 457 U.S. 596, 605 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980). A First Amendment right of access can also attach where judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." Id. Once a qualified First Amendment right of access attaches, "continued sealing of the documents may be justified only with specific,

on-the-record findings that sealing is necessary to preserve
higher values and only if the sealing order is narrowly tailored
to achieve that aim." Lugosch, 435 F.3d at 124 (citing In re
New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)). The
preservation of trade secrets or commercially sensitive
information may constitute such a higher value under certain
circumstances. See Richmond Newspapers, 448 U.S. at 600 n.5
("The preservation of trade secrets, for example, might justify
the exclusion of the public from at least some segments of a
civil trial."); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059,
1073 (3d Cir. 1984) ("[A]n interest in safeguarding a trade
secret may overcome a presumption of openness."); In re Iowa
Freedom of Info. Council, 724 F.2d 658, 664 (8th Cir. 1983) ("We
do not wish to be understood as announcing a rule that the
presence of trade secrets will in every case and at all events
justify the closure of a hearing."); Standard & Poor's Corp. v.
Commodity Exch., Inc., 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982)
("[T]he right to attend judicial proceedings should, in
appropriate circumstances, give way to the right to protect
one's trade secrets.")

### B. The Documents at Issue

As an initial matter, all the documents at issue here are
judicial documents, and they are subject to a strong presumption
of access under the common law and a qualified right of access

under the First Amendment.  See Lugosch, 435 F.3d at 119

("[D]ocuments submitted to a court for its consideration in a

summary judgment motion are -- as a matter of law -- judicial

documents to which a strong presumption of access attaches,

under both the common law and the First Amendment.")  The

documents at issue relate to proceedings before the Special

Master and this Court concerning MasterCard's January 10, 2005

Motion to Enforce this Court's October 9, 2001 Judgment in this

case, United States v. Visa U.S.A., Inc., 163 F. Supp. 2d 322

(the "Final Judgment").  These enforcement proceedings are

analogous to a motion for summary judgment because they

constitute "an adjudication, [which] is a formal act of

government, the basis of which should, absent exceptional

circumstances, be subject to public scrutiny." Joy v. North,

692 F.2d 880, 893 (2d Cir. 1982).  Thus, the presumption of

access is "of the highest." Lugosch, 435 F.3d at 123.

        In what follows, the Court applies the more stringent First

Amendment standard.  See id. at 124; Green Mt. Chrysler Plymouth

Dodge Jeep v. Crombie, 2007 U.S. Dist. LEXIS 22095 (D. Vt. 2007)

(applying First Amendment standard where both common law and

First Amendment presumptions of access attach).

### C. Redactions Proposed by MasterCard and Visa

        In evaluating whether "higher values" support the proposed

redactions, the Court considers the extent of the redactions;

whether they are integral or tangential to the adjudication; the
damage that disclosure might cause; and the public interest in
the redacted material.   See Joy, 692 F.2d at 893.

MasterCard proposes to redact three general categories of
information: (1) the specific deal terms of its agreements with
member banks, including the magnitude of financial incentives,
board membership, and the extent of indemnification; (2) two
issuance agreements with its member banks Washington Mutual and
First Midwest that are currently in effect; and (3) internal
analyses, primarily from third-party banks, which analyze the
financial incentives offered by MasterCard and their affect on
bank revenues.

MasterCard offers the declaration of Douglas Raymond,
Senior Vice President for Pricing Strategy and Business
Performance, in support of its proposed redactions.   His
responsibilities include analyzing and reviewing the financial
and business terms contained in MasterCard's agreements with
issuing banks, as well as negotiations with banks concerning
such agreements.   (Raymond Decl. ¶ 1.)   Raymond is qualified to
describe the harm that MasterCard and third-party banks could
suffer if the Court were to reject the proposed redactions.

Like MasterCard, Visa proposes to redact specific
references to deal terms in its issuance agreements with member
banks, as well as the issuance agreements themselves.   In

addition, Visa proposes to redact internal Visa conversion analyses, Visa strategy documents, confidential revenue projections, information about specific Visa issuers, and Visa's By-Laws.

Visa offers the declaration of Christopher Lambert, the Senior Vice President of Client Services at Visa.  His responsibilities include promoting the relationships between Visa U.S.A. and its bank members and, in particular, negotiating agreements with third-party banks.  (Lambert Decl. ¶ 2.) Lambert is qualified to describe the harm that Visa and third-party banks could suffer if the Court does not accept the proposed redactions.

The redactions approved below are narrow in scope.  The Court redacts only numbers wherever possible, leaving the rest of the sentence so that a reader can understand the Court's reasoning through context.  Most of the redacted material is entirely tangential to the Court's adjudication, and the small amount of redacted material which plays a role in the Court's analysis plays only a minor role.  The harm to networks and banks that could result from disclosure of the redacted information is substantial and is the same type of harm that has justified the sealing of documents in other cases.  The public has no interest in the redacted material other than as a means of understanding the Court's analysis and overseeing the

workings of the judicial system.  The redacted material reflects confidential deal terms and sensitive internal information that are of interest only to competitors seeking to gain business advantage over the parties in this litigation and third-party member banks.  Accordingly, the approved redactions are necessary to preserve the higher value of protecting highly confidential and commercially sensitive information that, if revealed, would cause significant competitive harm, and the proposed redactions are narrowly tailored to achieve that goal.

### 1. Specific Deal Terms and Issuance Agreements

MasterCard, Visa, and all the third-party banks propose to redact specific deal terms such as the dollar value of incentive packages offered by networks to member banks.[2]  This information is commercially valuable to MasterCard and Visa, is highly confidential, and if revealed, would give competing networks a significant negotiating advantage.  (Raymond Decl. ¶¶ 2-6; Lambert Decl. ¶ 6.)  Accordingly, this information is akin to a trade secret.  See Encyclopedia Brown Prods. Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998).  If the

---

[2] Exhibits which contain specific deal terms include, inter alia, MasterCard Exhibits 1, 7, 8, 18, 25, 28, 59, 100, 109, 132, 166, 167, 169, 170, 185, 206, 212, 263, 289, 292, 306, 327, 384, 395, 415, 438; Visa Exhibits 296, 301, 317, 589, 671, 871, 914, 932, 1760, 1767; portions of the hearing transcript; and portions of the depositions of William Cooper and Douglas Marshall.  In its Opinion and Order, the Court does not rely on MC Ex. 1, 8, 28, 289, 292, 327, 395; any of the aforementioned Visa exhibits; or any of the proposed redactions to deposition or hearing transcripts.  The Court accepts the proposed redactions to these documents except as specifically noted in this Order or the attached chart.

details of an incentive package were revealed, a network's competitors would be able to exploit this information in future negotiations with that network's current and potential bank customers.  (Raymond Decl. ¶ 4.)  Banks could also use this information to extract the same level of incentives or concessions from the network.  (Raymond Decl. ¶ 5.)  This would place the network at a competitive disadvantage.  (Id.)  Revealing this information would also place member banks at a disadvantage in future negotiations with both vendors and networks, since competing banks and potential network partners would have access to the details of its current agreement.  (Stratton Aff. ¶ 10; Healey Decl. ¶¶ 4-5.)

    The identical rationale applies to the issuance agreements themselves, since they detail all the relevant specific deal terms.[3]  (Raymond Decl. ¶¶ 4-6.)  Disclosing these agreements would reveal the specific strategies that a network uses to win the business of third-party banks, which competing networks could use to their advantage by adopting terms or extrapolating incentives offered to other banks.  (Lambert Decl. ¶¶ 5-8.)  The structure of an issuance agreement is the product of many iterations of partnership agreements, and it would harm a

---

[3] Exhibits which contain issuance agreements include MasterCard Exhibits 147, 265, and 351; and Visa Exhibits 1132 and 1157.  In its Opinion and Order, the Court does not rely on MasterCard Exhibit 351 or Visa Exhibits 1132 or 1157. The Court does rely on portions of MasterCard Exhibits 147 and 265; it has directed the parties not to redact those portions in the attached chart.

network if such agreements were made public.  (Lambert Decl. ¶
8.)  The release of issuance agreements would also damage a
network's competitive position with respect to its current or
potential member banks, particularly the three banks that are
parties to those agreements, as competitors would have access to
their volume targets and financial incentives.  (Lambert Decl. ¶
8-9.)  This information could be used to derive sensitive,
proprietary goals and financial targets about these banks.
(Lambert Decl. ¶ 10.)

Networks and banks typically hold issuance agreements and
their terms to be "among the most highly confidential
information and commercially sensitive information" that they
possess.  (Lambert Decl. ¶ 6.)  This type of information is so
sensitive that third-party banks have rigorous internal review
processes, including review by several different departments and
committees, to ensure that such information is never disclosed.
(See Stratton Aff. ¶ 11.)

However, the Court finds that references to indemnification
should not be redacted.  The Court bases its Opinion and Order
in this case in part on the factual finding that banks required
MasterCard to agree to indemnify them for all or a significant
part of their exposure to the Settlement Service Fee ("SSF")
before they would seriously consider switching from Visa to
MasterCard.  Accordingly, references to indemnification are

integral to the Court's adjudication.  For this reason, portions of issuance agreements which deal directly with the SSF or with indemnification should not be redacted.  By refusing to redact references to indemnification, the Court serves the interests of the public in understanding and overseeing the adjudicative process of the Court while at the same time protecting as much as possible the significant potential harm to networks and third-party banks that would result from disclosure of commercially sensitive information.

Accordingly, the proposed redactions of deal terms and issuance agreements are accepted in part and rejected in part.

### 2. Visa's By-Laws

MasterCard Exhibit 181 contains the full text of Visa's By-Laws, which are not publicly available.  The proposed redactions encompass the rules governing Visa's relationship with its member banks but do not encompass By-Law 3.14, the only By-Law at issue here.  The redacted information plays no part in the Court's adjudication, and its release could cause Visa substantial competitive harm.  (Lambert Decl. ¶ 17.) Accordingly, the Court accepts the proposed redactions to MasterCard Exhibit 181.

### 3. Strategic Documents and Revenue Projections

MasterCard Exhibits 35 and 152 contain information relating to Visa's internal business strategy.  (Lambert Decl. ¶ 13-14.)

These documents play no role in the Court's adjudication.
MasterCard Exhibits 153 and 412 contain confidential revenue
projections.  (Lambert Decl. ¶ 15.)  The redacted portions of
these documents play no role in the Court's adjudication.
Revealing the information contained in the redacted portions of
all these documents would cause competitive harm to Visa.
(Lambert Decl. ¶ 13-15.)  Accordingly, the Court accepts the
proposed redactions to these four exhibits.

### 4. Volume Information

Visa Exhibit 1657 and MasterCard Exhibit 150 contain
information which would allow a competitor to determine the size
of a bank's volume on the Visa network.  (Lambert Decl. ¶ 16.)
Release of this information could cause competitive harm to Visa
member banks.  (Id.)  In its Opinion and Order, the Court
discusses debit volume only in a general fashion.  A reader does
not require the sort of bank-by-bank volume information redacted
here in order to understand the Court's reasoning.  Accordingly,
the Court accepts the proposed redactions to these two exhibits.

### 5. Third Party Analyses of Network Offers

MasterCard proposes to redact internal analyses of the
impact of financial incentives on bank revenues.[4]  Release of
this information could harm networks and member banks for all

---

[4] Exhibits which include analyses of network offers include, inter alia,
MasterCard Exhibits 1, 7, 12, 18, 28, 206, 212, 289, 292, 413, 438, 439, and
Visa Exhibit 871.

the reasons discussed <u>supra</u> in <u>Part</u> II.C.1 and <u>infra</u> in Part II.D.  Accordingly, the Court accepts MasterCard's proposed redactions.

### D. Additional Redactions Proposed by Third-Party Banks

For the following reasons, the Court accepts in part and rejects in part the proposed redactions of six third-party banks.  Many of the banks propose redacting the size of an incentive package offered by a network; other financial incentives and deal terms; the term length of issuance agreements; and the issuance agreements themselves.  The Court accepts these redactions for all the reasons discussed <u>supra</u> in Part II.C.  The Court limits its analysis to redactions proposed by banks which differ in kind from the redactions proposed by MasterCard and Visa.[5]

### 1. TCF Financial Corporation

TCF Financial Corporation ("TCF") proposes to redact (1) non-public information regarding actual usage of TCF's debit card accounts, including information about recent historical sales and transaction volumes; and (2) TCF's five-year strategic growth plans.  TCF offers the affidavit of Earl Stratton, Executive Vice President and Chief Information Officer of TCF, who is qualified to describe the harm that TCF could suffer if the Court does not accept its proposed redactions.  TCF also

---

[5] The Court accepts the additional redactions proposed by third-party banks except as specifically noted in this Order or the attached chart.

provides a well-reasoned memorandum of law and a helpful set of proposed findings of fact and conclusions of law.

Specific knowledge of historical sales and transaction volumes would provide competitors with an understanding of TCF customers' habits and specific spending patterns that could allow its competitors to target its customers or measure the effectiveness of TCF promotions and advertising, which would harm TCF.  (Stratton Aff. ¶ 5-6.)  TCF's five-year growth plans form the basis of forecasting revenues and expenses.  Release of this information would place TCF at a significant disadvantage in marketing or negotiating for services, because the other negotiating party would have access to its internal projections. It is the custom and practice among card issuers to keep this type of information confidential.  (Stratton Aff. ¶¶ 7-9.)

These proposed redactions are necessary to preserve the higher value of protecting commercially sensitive information that, if revealed, would cause competitive harm to TCF.  The proposed redactions are narrowly-tailored because the additional information TCF proposes to redact is located on only three pages (see MC Ex. 25 at 653, 655, 657.), and only numbers are redacted wherever possible.  Accordingly, the Court accepts the proposed redactions of TCF.

### 2. Associated Bank

Associated Bank ("Associated") proposes to redact information regarding the revenue and profit margins of Associated's debit business and the terms of Associated's issuance agreement with MasterCard.  Associated offers the affidavit of Val Glytas, Senior Vice President of Associated Bank, who is qualified to describe the harm that Associated could suffer if the Court does not accept its proposed redactions.

Associated's proposed redactions deal with revenue and profit information which, if revealed, could cause financial harm to Associated if it were released.  (Glytas Dep. ¶¶ 3-7.) These proposed redactions are necessary to preserve the higher value of protecting highly confidential and commercially sensitive information, and they are narrowly tailored to achieve that goal because they are limited to information which plays no role in the Court's adjudication.

However, the Court rejects Associated's redaction of the size of its SSF exposure, as this information is directly related to the Court's adjudication.  Alterations to Associated's proposed redactions appear in the attached chart. Accordingly, Associated's proposed redactions are accepted in part and rejected in part.

### 3. PNC Bank

In addition to the redactions proposed by Visa and MasterCard, PNC Bank ("PNC") proposes to redact MasterCard Exhibit 12 and MasterCard Exhibit 18 in their entirety (the "First Annapolis Studies" or "Studies"). PNC offers the affidavit of Daniel Tuccillo, its Senior Vice President for Deposit and Card Product Management and Marketing, who is qualified to describe the harm that PNC could suffer if the Court does not accept its proposed redactions.

The First Annapolis Studies contain expensive, sought-after professional advice relating to PNC's strategies for dealing with its competitors through the year 2009. (Tuccillo Aff. ¶¶ 5-8.) The Studies include detailed profitability objectives and advise PNC on the specific criteria that it should use in choosing among vendors in the debit card market. (Id.) This information is confidential, and if unsealed, it would provide a roadmap for PNC's competitors to learn its strategy and approach to the debit card market, which would cause irreparable competitive harm to PNC. (Id.) The Court does not rely on the Studies in its Opinion and Order. Sealing the Studies in their entirety is necessary to preserve the higher value of protecting highly confidential and commercially sensitive information. Since the sensitive material encompasses approximately 95% of the Studies, sealing these exhibits in their entirety is

sufficiently narrowly-tailored to pass muster under Lugosch.
Accordingly, the Court accepts the proposed redactions of PNC.

### 4. Washington Mutual

Washington Mutual offers the declaration of Douglas
Marshall, Senior Vice President of Payment Products, who is
qualified to describe the harm that Washington Mutual could
suffer if the Court does not accept its proposed redactions.  In
addition to the redactions proposed by Visa and MasterCard,
Washington Mutual proposes to redact the specific dollar yield
that Washington Mutual will recognize over the term of its
agreement in MasterCard Exhibit 292.  The Court accepts this
proposed redaction for the reasons discussed supra in Part
II.D.1.

However, the Court rejects Washington Mutual's proposed
redaction of a reference to indemnification in MasterCard
Exhibit 292 for the reasons discussed supra in Part II.C.1.
Accordingly, the proposed redactions of Washington Mutual are
accepted in part and rejected in part.

### 5. Branch Banking and Trust Company

Branch Banking and Trust Company ("BB&T") proposes
redactions to MasterCard Exhibit 1 beyond those proposed by Visa
and MasterCard, specifically, pages BBT0032 and BBT0039.  BB&T
offers the declaration of Scott Qualis, Senior Vice President of
BB&T and its Deposit Access Products Manager, who is qualified

to describe the harm that BB&T could suffer if the Court does not accept its proposed redactions.  The proposed redactions comprise two pages from MasterCard Exhibit 1, which is a sixteen-page exhibit.  The proposed redactions contain internal data regarding BB&T's payment card metrics, the mix of transaction types at BB&T, its transaction volumes, and projected changes in those volumes.  These pages divulge sensitive information about BB&T that could be exploited to BB&T's detriment by its competitors and networks.  (Qualis Decl. ¶¶ 7-15.) Making this information public would put BB&T at a competitive disadvantage.  (Id.)  These proposed redactions are necessary to preserve the higher value of protecting highly confidential and commercially sensitive information that, if revealed, could damage BB&T, and they are narrowly tailored to achieve that goal because they are limited in scope.  Accordingly, the Court accepts the proposed redactions of BB&T.[6]

### 6. Bank of the West

Bank of the West proposes redactions of specific deal terms in MasterCard Exhibit 212 and the Special Master's Report but does not make clear whether its proposed redactions exceed those already proposed by Visa and MasterCard.  Bank of the West's concerns about revealing confidential information are adequately

---

[6] BB&T also proposes redactions to MasterCard's Memorandum of Law in Opposition to Visa's Objections to the Special Master's Report which are accepted for the reasons stated supra in Part II.c.i.

addressed by the redactions proposed by Visa and MasterCard
which the Court has already accepted, as discussed _supra_ in Part
II.C.

## III. Conclusion

For the reasons stated herein, the redactions proposed by
Visa, MasterCard, and six third-party banks are accepted in part
and rejected in part.  The approved redactions are necessary to
preserve the higher value of protecting highly confidential and
commercially sensitive information that, if revealed, would
cause significant competitive harm, and the proposed redactions
are narrowly tailored to achieve that goal.

The Court has attached a chart which alters proposed
redactions to (1) the Report; (2) MasterCard and Visa exhibits;
(3) the hearing transcript; (4) deposition transcripts; and (5)
post-Report briefing.  The Court directs Visa and MasterCard to
alter their own proposed redactions and the proposed redactions
of the third parties consistent with the instructions in this
Order and the chart.  The Court directs Visa and MasterCard to
review all the proposed redactions to ensure (1) that redactions
of the value of incentive packages encompass only the numeric
dollar value and not the rest of the relevant sentence or
phrase; and (2) that references to indemnification are not
redacted.  Visa and MasterCard shall make these changes and

publicly file a set of documents with redactions as described

herein on or before June 20, 2007.

**SO ORDERED:**

_Barbara S. Jones_

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           June 7, 2007

ALSO MAILED/FAXED TO:

COUNSEL FOR PLTFF(S):_____ ✓

COUNSEL FOR DFT(S):_____ ✓

PLTFF PRO SE:_____

DFT PRO SE:_____

DATE: 6/7/07

BY: MW

- 21 -

| Alterations to Visa's and MasterCard's Proposed Redactions | | | |
|---|---|---|---|
| **Page/ Exhibit** | **Redaction to be Altered** | **Alteration** | **Reason** |
| Report 26 | First three redactions | Do not redact | Refers to indemnification |
| Report 27 | All redactions in body text except the value of MasterCard's offer to Bank of the West on line 8 | Do not redact | Refers to indemnification |
| Report 28 | Reduce large block redaction such that only the following are redacted: (1) the length of the agreement; (2) the length of the extension option; (3) the size of the rebate. Only the numerical figures should be redacted, not the rest of the language. | Reduce redaction | Refers to indemnification; proposed redaction is overbroad |
| Report 29 | First redaction, lines 1-2<br>Fifth redaction, line 16<br>Sixth redaction, line 17 | Do not redact | Refers to indemnification; Proposed redaction is overbroad |
| Report 29 | Redaction of lines 6-7 should be reduced as follows: WaMu assumed the full risk of the SSF in exchange for [redacted]." | Reduce redaction | Proposed redaction is overbroad |
| Report 30 | First and second redactions<br>Reference to indemnity in note 33 | Do not redact | Refers to indemnification |
| MC Ex. 132 | Do not redact first sentence in the third redacted paragraph. | Reduce redaction | Deals with indemnification; Proposed redaction is overbroad |
| MC Ex. 147 | Do not redact Section I(c), Legal Support | Do not redact | Deals with SSF and indemnification |
| MC Ex. 212 | Redact as follows:<br>"VISA has included a [redacted] signing bonus as well as [redacted].  MasterCard has not increased the [redacted] signing bonus or [redacted].  However all other offer components are extended to the CFB portfolio including indemnification of the VISA settlement fee." | Reduce redaction | Deals with indemnification; proposed redaction is overbroad |

| Page/ Exhibit | Redaction to be Altered | Alteration | Reason |
|---|---|---|---|
| MC Ex. 265 | Do not redact the first paragraph on page 200550 | Do not redact | Refers to the date the parties entered into the agreement, a fact upon which the Court relies in its Opinion and Order |
| MC Ex. 327 | Second redaction spanning lines 12-13 | Do not redact | Refers to indemnification |
| Tr. 627 | Third and fourth redactions | Do not redact | Relates to indemnification |
| Tr. 628 | All redactions | Do not redact | Relates to indemnification |
| Marshall Dep. 65-66 | All redactions | Do not redact | Refers to indemnification |
| MC Adopt Mem. 13 | All redactions in fourth paragraph | Do not redact | Refers to indemnification |
| MC Adopt Mem. 14 | All redactions in footnote 8 | Do not redact | Refers to indemnification |
| MC Adopt Mem. 20 | Redaction in footnote 12; redact only the names of the documents in parentheses, not the language in the textual sentence. | Reduce redaction | Issuance agreements are discussed in sufficiently general terms to avoid revealing potentially damaging information |
| MC Opp. 1 | Redaction spanning lines 19-20 | Do not redact | Refers to indemnification |
| MC Opp. 2 | Redaction spanning lines 7-8 | Do not redact | Refers to indemnification |
| MC Opp. 15 | Redaction of word "indemnification" | Do not redact | Refers to indemnification |

| Page/ Exhibit | Redaction to be Altered | Alteration | Reason |
|---|---|---|---|
| MC Opp. 25 | Block Redaction; redact only the numeric dollar value as follows: noting that MasterCard's original proposal, *when factoring in Visa's $20 million exit penalty*, was $[redacted] under Visa's proposal, and that MasterCard's revised proposal including an additional $[redacted] in incentives was **"only a push"** against Visa's original offer. MC Ex. 1 at 00029 (Report 19). | Reduce Redaction | Proposed redaction is overbroad |
| MC Opp. 31 | Redaction in footnote 20; Redact only the numeric dollar value, not the textual sentence or citation. | Reduce redaction | Proposed redaction is overbroad |
| MC Opp. 34 | All redactions | Do not redact | Refers to indemnification |
| MC Opp. 35 | First block redaction: do not redact<br>Second block redaction: do not redact<br>Third block redaction: redact only the numeric value of the sign-on bonus.<br>Redaction in footnote 22; redact as follows: "Visa's criticism of the Special Master's 50% estimate is unfounded. The original April 2004 "handshake" deal between WaMu and MasterCard included a 75% legal indemnity against the SSF. *See* Report 28 (citing MC. Exs. 100, 132). WaMu was unhappy with that arrangement and demanded more value. Ultimately, WaMu traded away the 75% legal indemnity (which as the Special Master noted, was worth "less" if MasterCard's obligation "may never ripen") (Report at 29-30) for [redacted]. Report 29 (citing MC Ex. 147). As a rational bank, WaMu obviously viewed this as a valuable deal – indeed a more valuable deal | Reduce redaction | Refers to indemnification |
|  |  |  |  |

| Page/ Exhibit | Redaction to be Altered | Alteration | Reason |
|---|---|---|---|
| | than the handshake arrangement.  Given that WaMu traded a 75% legal indemnity for these financial incentives, the Special Master's calculation of the value of the incentives at 50% of the SSF risk must be viewed as a conservative estimate." | | |
| Visa Obj. 6 | Redactions in the fourth full paragraph | Do not redact | Refers to indemnification |
| Visa Obj. 7 | Redaction in last paragraph | Do not redact | Refers to indemnification |
| Visa Obj. 34 | All redactions | Do not redact | Refers to indemnification |
| Visa Obj. 40 | All redactions | Do not redact | Refers to indemnification |
| Visa Obj. 41 | Redact only the numeric dollar value on line 2; make no other redactions on this page | Reduce redaction | Refers to indemnification |
| Visa Obj. 42 | First redaction | Do not redact | Refers to indemnification |
| Visa Obj. 44 | All redactions | Do not redact | Refers to indemnification |
| Visa Obj. 45 | Do not redact "SSF obligation" on line 1<br>Do not redact the phrase "(not including indemnification)"<br>In footnote 51, redact only the numeric dollar value of the incentive, not the percentage of indemnification or other portions of textual sentences. | Reduce redaction | Refers to indemnification |
| Visa Reply 5 | All redactions | Do not redact | Refers to indemnification |
| Visa Reply 27 | Redaction in footnote 27 | Do not redact | Refers to indemnification |
| | | | |

- 25 -

| Page/ Exhibit | Redaction to be Altered | Alteration | Reason |
|---|---|---|---|
| | Alterations to Associated Bank's Proposed Redactions | | |
| Tr. 626 | All bracketed redactions: [] | Do not redact | Refers to size of SSF exposure |
| Tr. 654 | Redaction on line 5 | Do not redact | Refers to size of SSF exposure |
| Tr. 673 | Bracketed redaction on line 20 | Do not redact | Refers to size of SSF exposure |
| Tr. 679 | All redactions | Do not redact | No higher value identified which necessitates redaction |
| | Alterations to Washington Mutual's Proposed Redactions | | |
| MC Ex. 292 | Redaction on WMB303 referring to indemnification | Do not redact | Refers to indemnification |