```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                     :
UNITED STATES,                       :
                                     :
                 Plaintiff,          :
                                     :   98 Civ. 7076 (BSJ)
        v.                           :
                                     :
VISA U.S.A., INC., ET Al.,           :   Opinion & Order
                                     :
                                     :
                 Defendants.         :
                                     :
------------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

**I. Background and Procedural History**

The Court presumes familiarity with the factual background giving rise to these proceedings. Defendant MasterCard International Incorporated ("MasterCard") moved to enforce the Court's October 9, 2001 judgment in this case, United States v. Visa U.S.A., Inc., 163 F. Supp. 2d 322, 410 (S.D.N.Y. 2001) (the "Final Judgment") against Defendant Visa U.S.A., Inc. ("Visa") on January 10, 2005. (See MC Mot. Enforce, Doc. No. 334.) The Court appointed a special master to determine whether Visa's By-Law 3.14 -- also known as the "Settlement Service Fee" or "SSF" -- violates the Final Judgment.[1] (See Order of Aug. 18, 2005 ("Order of Reference").) The Special Master issued a Report in

---

[1] By-Law 3.14 provides that if one of Visa's 100 largest issuers moves its debit portfolio from Visa to MasterCard, that issuer must pay its proportionate share of Visa's remaining settlement obligation arising from In Re Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (the "Wal-Mart" litigation).

1

which he concluded that By-Law 3.14 violates the Final Judgment. (See Report 32-36.)  The Court issued an Opinion & Order on June 7, 2007, which it amended on June 15, 2007, adopting the findings of fact and conclusions of law in the Report.  In Part VII (the "Remedy") of the Amended Opinion & Order, the Court ordered Visa to repeal By-Law 3.14 and granted termination rights to Visa member banks subject to the SSF that entered into debit issuance agreements with Visa while the SSF was in effect.[2]

Visa now moves, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, for a stay pending appeal of the portions of the Court's Amended Opinion & Order that grant termination rights to Visa member banks.[3]  (Visa Mem. Supp. 4.)  For the following reasons, Visa's Motion for a Stay is DENIED.[4]

---

[2] Paragraph II.B of the Remedy provides:
Visa shall permit any Visa debit issuer subject to the SSF prior to its repeal who entered into an agreement that includes offline debit card issuance with Visa on or after June 20, 2003 to terminate its agreement with Visa, provided that:
(i)     the terminating bank has entered into an agreement with MasterCard to issue MasterCard brand debit cards;
(ii)    the terminating bank has repaid to Visa any benefits or financial incentives that Visa provided to the issuer that the issuer has not yet earned under its agreement with Visa
(iii)   the terminating bank complies with the foregoing terms within two years of the date this Order takes effect.
(Amended Opinion & Order 40.)

[3] Visa has repealed By-Law 3.14 and does not seek to stay that portion of the Remedy.

[4] The Court decides the instant Motion without oral argument.  See AD/SAT v. AP, 181 F.3d 216, 226 (2d Cir. 1999).  The Court heard oral argument with respect to the proper scope of the Remedy -- i.e., whether the Remedy should include termination rights -- on April 23, 2007.

2

**II. Discussion**

Almost all of the contracts subject to termination will expire during the next year.  (See Oral Arg. Tr. 25:15-26:8.) Visa's proposed stay all but guarantees that issuers with contracts subject to termination will never have an opportunity to exercise their termination rights.  A stay would permit Visa to avoid this portion of the Court's Remedy altogether.

**A. Applicable Law**

The Court looks to the following four factors in evaluating Visa's Motion for a Stay:

> (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and (4) the public interests that may be affected.

Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2d Cir. 1993); accord Cooper v. Town of East Hampton, 83 F.3d 31, 36 (2d Cir. 1996).  The Court treats these factors "somewhat like a sliding scale."  Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006). "[T]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors."  Id. (quoting Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002).

**B. Irreparable Harm to Visa**

Visa argues that it will suffer irreparable harm because, if Visa debit issuers terminate their agreements early and Visa prevails on appeal, the Court will be unable to restore those agreements to Visa.  Visa argues that this is the same irreparable injury analysis that led the Court to stay the Final Judgment pending its appeal.  (See Order of Feb. 6, 2002 (Doc. No. 247) ("Of particular concern are the potentially irreversible consequences of Section III.D of the Final Judgment, which permits member banks to rescind dedication agreements.").)

The Final Judgment involved structural changes to the entire card issuance industry, whereas the Remedy here is much less far-reaching.  The Remedy here encompasses only Visa debit agreements, almost all of which are set to expire during the next year.  Concerns related to credit issuance that existed at the time of the Final Judgment no longer apply.  For example, because issuers keep their debit portfolios on one network, there is no concern that a bank would opportunistically enter into a *de minimis* agreement with MasterCard solely to get out of its agreement with Visa and then shift volume to a third network.[5]

---

[5] Moreover, American Express and Discover do not currently offer offline debit services.

Visa also argues that it will suffer irreparable injury because (1) pro-rating the incentives to be repaid will not fully compensate Visa for its loss if a bank terminates early, because Visa would have negotiated lower yearly incentive payments for issuance agreements with a shorter term; (2) there is no practical way to identify the benefits tied only to debit, since some incentives were the result of gaining an issuer's business for more than one type of payment product, and (3) disputes will arise as to what counts as an unearned incentive under the Remedy.

None of these concerns establishes irreparable injury, because all these concerns exist regardless of whether the Court grants termination rights.  Even without the Court's Remedy, Visa member banks can terminate their issuance agreements with Visa at any time, and a bank that does so must repay unearned financial incentives according to the terms of its issuance agreement.  In such a case, Visa would not be entitled to the benefit of its bargain in terms of lost revenue, nor would it be entitled to reimbursement for the difference between its current yearly incentive payments and the lower yearly incentive payments it claims it would have negotiated if the contract term were shorter than five years.

If the parties to an issuance agreement can resolve disputes about unearned incentives where an issuer terminates

early of its own accord, then they can resolve such disputes where an issuer exercises its termination rights under the Court's Remedy. Paragraph II.B.ii of the Remedy provides that terminating banks must repay incentives "that the issuer has not yet earned *under its agreement with Visa*." (Am. Op. & Order 40 (emphasis added).) Thus, the terms of the issuance agreement will govern which incentives must be repaid even where an issuer exercises its termination rights. And if disputes do arise, the parties may return to the Court to resolve them pursuant to Paragraph IV.C of the Remedy.

### C. Substantial Injury to MasterCard

As explained above, because nearly all of the agreements subject to termination will expire during the next year, termination rights will serve no practical value unless the Court's Remedy becomes effective immediately. If banks were to exercise their termination rights and Visa were to prevail on appeal, then Visa admittedly would have suffered harm from those terminations. However, if the Court were to stay the portion of its Remedy dealing with termination rights and Visa were to lose on appeal, MasterCard would have suffered the converse harm -- namely, MasterCard would have been prevented from lawfully entering into agreements that it otherwise would have entered into, but for the issuance of a stay. While this harm may not be as extensive as the harm Visa would suffer from the loss of

6

existing agreements, it is still substantial harm, and the difference between the two is insufficient to outweigh the other factors.

**C. Chances of Success on Appeal**

Visa argues that the Court's Amended Opinion & Order raises "significant jurisprudential questions" for appeal. None presents a substantial possibility of success on appeal.

First, Visa argues that it has a substantial possibility of success in showing that the Court should have applied contempt standards. The Court thoroughly addressed this issue in Part II of its Amended Opinion & Order. Suffice it to say that a motion to enforce is a procedurally proper mechanism for bringing about compliance with a prior court order and does not require the application of contempt standards. (See Am. Op. & Order 7-11.). And even if Visa were to succeed, the application of contempt standards would not alter the outcome of these proceedings. As the Court stated in its Amended Opinion & Order, the factual record in this case shows by clear and convincing evidence that Visa's SSF violates the Final Judgment. (Am. Op. & Order 11 n. 11.)

Second, Visa argues that it has a substantial possibility of success in showing that the SSF, as a factual matter, did not violate the Final Judgment. To do so, Visa would have to establish that this Court's principal factual findings were

7

clearly erroneous.  See Fed. R. Civ. P. 52(a).  This is a heavy burden that Visa is unlikely to sustain.  The record in this case easily shows by a preponderance of the evidence that the SSF effectively prevents Visa member banks from switching to MasterCard in violation of Paragraph III.C of the Final Judgment.  (Am. Op. & Order 11-12.)  Visa's own executives and internal documents confirm this conclusion.  (See id. at 13.)  This issue does not present a substantial possibility of success.

Third, Visa argues that it has a substantial possibility of success in showing that the Court's termination remedy is outside the Court's jurisdiction with respect to contracts negotiated before the effective date of the Final Judgment.  Visa is correct -- and MasterCard does not dispute -- that an equitable remedy must be limited to curing the harm caused by the wrongful conduct at issue and tailored to the circumstances of the particular case.  (See MC Opp. Mot. Stay 13 n.4).  However, this is precisely the course the Court has taken here.  The Court has the equitable power to give present effect to its prior orders.  (See Am. Op. & Order 8-9, 35 (citing cases).)  Paragraph III.C of the Final Judgment guarantees issuers the ability to make meaningful branding decisions free of prohibitions like the SSF.  (Id. 39.)  If the Court's termination remedy did not extend to banks that entered into

debit issuance agreements with Visa before the effective date of the Final Judgment, then the Final Judgment would have no meaningful effect for nearly another year, even though it took effect on October 15, 2004.  Moreover, Visa was on notice that the Court would consider granting such termination rights if the Final Judgment were upheld on appeal.  (See Order of Dec. 8, 2003 at 5 n.3 ("[A]ssuming the Final Judgment is upheld on appeal and jurisdiction reverts to this Court, the Court -- if it finds that By-Law 3.14 violates the Final Judgment -- may fashion an appropriate remedy, including rescission of those contracts.").)

 Finally, Visa states in a footnote that it intends to raise the question whether a special master must apply the Federal Rules of Evidence.  While the Second Circuit has yet to decide this issue, all the courts and commentators to have addressed it -- including this Court -- have concluded that, absent explicit direction by the district court to the contrary, a special master is not bound by the Federal Rules of Evidence.  (Am. Op. & Order 23 (citing cases and authorities).)  As such, Visa does not have a substantial possibility of success on this issue. And even if Visa were to succeed, the application of the Federal Rules of Evidence would not alter the outcome of these proceedings.  As the Court stated in its Amended Opinion & Order, the vast majority of the evidence relied upon by the

9

Special Master and this Court would have been admissible under the Federal Rules of Evidence.  (See Am. Op. & Order 25-31.)

### D. Public Interest

Although the public does not have a direct interest in the outcome of the instant litigation, the public has a strong interest in ensuring that parties comply with court orders.  This weighs against granting Visa's Motion for a Stay.  See New Pac. Overseas Group (USA) Inc. v. Excal Int'l Dev., No. 99 Civ. 2436, 2000 WL 802907, at *3 (S.D.N.Y. June 21, 2000) (denying motion for stay of award of fees and costs because, among other reasons, a party had violated a prior order and "the public interest plainly lies in ensuring that court orders are enforced").

### III. Conclusion

A stay would essentially nullify the portion of the Remedy which deals with termination rights, thereby causing substantial harm to MasterCard.  In light of Visa's low chances of success on appeal, the difference between this harm and the harm to Visa if the Remedy were to take effect immediately is insufficient to justify a stay pending appeal.

For the foregoing reasons, Visa's Motion for a Stay is DENIED.

SO ORDERED:

                                                      */s/ Barbara S. Jones*
                                                      **BARBARA S. JONES**
                                                      **UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
            August 7, 2007

[Stamp: COPY MAILED / FAXED TO: COUNSEL FOR PLTFF(S), COUNSEL FOR DFT(S), PLTF PRO SE, DFT PRO SE, DATE: 8/7/07, BY: MW]